UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **DANNY BATTLE** | **CIVIL ACTION NO. 20-0406** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE S. MAURICE HICKS, JR.** |
| **SARAH MIDBOE HOOD, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Plaintiff Danny Battle, a prisoner at Tensas Parish Detention Center proceeding pro se and in forma pauperis, filed the instant proceeding on approximately March 30, 2020, under 42 U.S.C. § 1983. He names the following defendants in their official and individual capacities: Assistant District Attorney Sarah Midboe Hood, Deputy Clerk Sherry Barry, Judge Brady O'Callaghan, Defense Attorney Kevin K. Berg, and District Attorney Charles Rex Scott.[1] For reasons below, the Court should dismiss Plaintiff's claims.

## Background

Plaintiff claims that Assistant District Attorney Sarah Midboe Hood "made unlawful changes to [his] indictment." [doc. # 1, p. 3]. He "was originally charged by a grand jury on a single count of second degree murder . . . on February 16, 2012." *Id.* at 5. On September 22, 2014, Hood "removed the legal indictment and brought forth an amended indictment bearing" a charge of "possession of a firearm by a convicted [felon]." [doc. #s 1, p. 5; 7, p. 2]. Plaintiff claims "that the added offense was untimely and unconstitutional as it had exceeded its 2 year limitation margin." [doc. # 1, p. 5].

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

Plaintiff claims that Hood also "committed multiple felony violations" by tampering with evidence, withholding testimony, "obstruct[ing] orders of the court," and threatening to both influence his testimony and prevent him from proceeding to trial. [doc. # 7, p. 1]. Hood allegedly told Plaintiff:

> I got a plea bargain of 20 years on each count and I will run them concurrent. . . . If you beat the murder, I'm still gonna get you for the gun. If you don't take my plea and you go to trial and beat the murder, I'm gonna make sure you never see daylight. I am gonna give you 20 years for the gun and bill you as a second felony habitual offender and you would have to do 40 years flat, day for day. . . . [Your] daughter . . . will be 30 years old when you come home, at least you will get to raise your grandkids. [sic].

*Id.* at 6.

Plaintiff claims that Deputy Clerk Sherry Barry "filed [the amended indictment] into public records at the Caddo Parish Courthouse on 9-22-2014 with the knowledge of its falsity." [doc. # 1, p. 3]. Barry allegedly "knew or should have known it was a counterfeit document." [doc. # 7, p. 3].

Plaintiff claims that Judge Brady O'Callaghan "was the overseer of the proceedings." [doc. # 1, p. 5]. He claims that O'Callaghan should have recused because he was a prosecutor when Plaintiff's "case came into the District Attorney's office[,]" and he therefore knew "the facts of [Plaintiff's] case in the mind of a prosecutor." [doc. # 7, p. 2]. Plaintiff claims further that O'Callaghan appointed Plaintiff an attorney who was related to the victim. *Id.* While O'Callaghan removed the attorney following Plaintiff's request, Plaintiff claims that O'Callaghan and the attorney "work[ed] together and all had knowledge." *Id.*

Plaintiff names Kevin K. Berg as a defendant because he "was the defense attorney." [doc. # 1]. He alleges: "Berg fail[ed] to protect my rights and by his failure to act as well as his statements. [sic]." [doc. # 7, p. 2]. Berg allegedly "conspired against" Plaintiff. *Id.*

2

Plaintiff claims that District Attorney Charles Rex Scott knew that Assistant District Attorney Hood "was acting against the law," yet allowed her to continue. *Id.* at 3.

Plaintiff seeks $200,000.00, criminal charges against any defendant who committed criminal conduct, release from custody, and a declaratory judgment. [doc. #s 1, pp. 3, 9; 7, p. 4].

**Law and Analysis**

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights

complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. Prosecutorial Immunity

"Criminal prosecutors . . . enjoy absolute immunity from claims for damages asserted under [42 U.S.C.] § 1983 for actions taken in the presentation of the state's case." *Watson v. Walton*, 68 F.3d 465 (5th Cir. 1995). "[S]tate prosecutors are absolutely immune from § 1983 damages claims based on activities intimately associated with the judicial phase of the criminal process." *Singleton v. Cannizzaro*, 2020 WL 1922377, at *3 (5th Cir. Apr. 21, 2020).

The Court "distinguishes between (1) actions taken 'in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [the prosecutor's] role as an advocate for the State,' and (2) 'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.'" *Id.* (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). "[C]onduct protected by absolute immunity is not limited only to the act of initiati[ng judicial proceedings] itself and to conduct occurring in the courtroom, but instead includes all actions which occur in the course of [the prosecutor's] role as an advocate of the State." *Id.* (internal quotation marks and quoted sources omitted).

"Absolute immunity is not a rigid, formal doctrine, but attaches to the functions a prosecutor performs." *Moon v. City of El Paso*, 906 F.3d 352, 359 (5th Cir. 2018). The Fifth Circuit has consistently held that the decision of when and whether to file criminal charges clearly falls within the scope of a district attorney's prosecutorial duties protected by absolute prosecutorial immunity. See *Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009); *Workman v. Calogero*, 174 Fed. App'x. 824, 826 (5th Cir. 2006). Absolute immunity shields prosecutors even when they act maliciously, wantonly, or negligently. *Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016).

Here, Assistant District Attorney Sarah Midboe Hood, in her individual capacity only,[3] is immune from Plaintiff's claim that she presented an amended indictment which was not authorized by a grand jury. See *Mosley v. Vance*, 47 F.3d 425 (5th Cir. 1995) (finding a prosecutor immune where the plaintiff alleged that the prosecutor "altered the indictments."); *Mills v. Criminal Dist. Court No. 3*, 837 F.2d 677, 678 (5th Cir. 1988) (finding a prosecutor immune where the prosecutor allegedly amended the indictment "after the jury was empaneled."

Hood is also immune from Plaintiff's claim that the "added offense" in the amended indictment "was untimely and unconstitutional as it had exceeded its 2 year limitation margin." [doc. # 1, p. 5]. As above, deciding *when* to file criminal charges clearly falls within the scope of a district attorney's prosecutorial duties protected by absolute prosecutorial immunity. See *Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009); *Workman v. Calogero*, 174 Fed. App'x. 824, 826 (5th Cir. 2006).

---

[3] *Mairena v. Foti*, 816 F.2d 1061, n.1 (5th Cir. 1987) (observing that "prosecutorial immunity is a personal defense" and is inapplicable where a district attorney is "sued in his official capacity only.").

Hood is likewise immune from Plaintiff's claim that she threatened him and intimidated him into pleading guilty. For instance, in *McGruder v. Necaise*, 733 F.2d 1146, 1148 (5th Cir. 1984), where the "defendants allegedly used their prosecutorial powers to threaten [the plaintiff] into dismissing his damages suit[,]" the court reasoned that, while such "a motivation would be reprehensible and such threats abhorrent, . . . they do not lift the decision to maintain a criminal prosecution from the prosecutorial activities protected by *Imbler.*" See also *Taylor v. Kavanagh,* 640 F.2d 450, 453 (2d Cir. 1981) (a prosecutor's activities in plea bargaining are an essential component of the criminal justice system and merit the protection of absolute immunity) (cited with approval by *Tubwell v. Dunn*, 12 F.3d 1097 (5th Cir. 1993)); *Henzel v. Gerstein*, 608 F.2d 654, 657 (5th Cir. 1979) (finding, where the plaintiff alleged that prosecutors threatened him with further prosecution, that the prosecutors were immune).

Under Plaintiff's allegations, Hood acted only in the course of her role as an advocate for the State. Accordingly, the Court should dismiss these claims as frivolous and because Plaintiff seeks monetary relief from a defendant immune from such relief.[4]

**3. Official Capacity Claims Against Hood**

Plaintiff seeks relief from Assistant District Attorney Hood in her official capacity. [doc. # 1, p. 3]. "A court's task is to identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation." *Burge v. Parish of St. Tammany,* 187 F.3d 452, 468 (5th Cir. 1999). "In *Burge,* [the Fifth Circuit Court of Appeal] concluded that 'a district attorney is the independent and final official policymaker for all of the administrative and

---

[4] Below, the Court addresses Plaintiff's request for declaratory relief. See *Chrissy F. by Medley v. Mississippi Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991) ("Neither absolute nor qualified personal immunity extends to suits for injunctive or declaratory relief under § 1983.").

7

prosecutorial functions of his office.'" *Truvia v. Julien*, 187 F. App'x 346, 350 (5th Cir. 2006) (quoting *Burge*, 187 F.3d at 469). "An assistant district attorney, therefore, is not a policymaker and not the proper defendant for an official capacity claim against the District Attorney's Office." *Id.* Thus, the Court should dismiss this claim.

**4. Separation of Powers**

Plaintiff claims that Assistant District Attorney Hood "committed multiple felony violations[,]" and he asks the Court to prosecute her. [doc. # 7, pp. 2, 4].

There is no constitutional right to have a person criminally prosecuted. *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).[5] Moreover, investigating and prosecuting possible criminal activities lies in the exclusive jurisdiction of the executive branch of government. In the federal context, for example, prosecuting criminal actions lies in the discretion of the Attorney General of the United States and duly authorized United States Attorneys. In Louisiana, prosecuting criminal actions lies in the discretion of the Louisiana Attorney General and the various District Attorneys. See LA. CODE. CRIM. PROC. arts. 61 and 62. Here, to the extent Plaintiff demands that the Court charge Hood with crimes, the Court should deny his request.[6]

---

[5] See *U.S. v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

[6] Plaintiff should, if he wishes, direct his concerns to a local, state, or federal police agency. That said, Plaintiff should be aware that, if a prosecuting authority investigates and chooses to forego filing charges, "[t]he decision to file or not file criminal charges . . . will not give rise to section 1983 liability." *Oliver*, 904 F.2d at 281. The courts "allow the government discretion to decide which individuals to prosecute, which offenses to charge, and what measure of punishment to seek." *U.S. v. Lawrence*, 179 F.3d 343, 348 (5th Cir. 1999); see, e.g. *Hymel v. Champagne*, 2007 WL 1030207, *2 (E.D. La. 2007) (denying a plaintiff's request to investigate a correctional center: "this Court has no authority to issue such an order and plaintiff has no constitutional right to such an order. Moreover, to the extent that plaintiff is alleging that a criminal investigation should be instituted, such investigations are solely within the purview of

8

**5.** *Heck v. Humphrey*

Under *Heck v. Humphrey*, 512 U.S. 477 (1994), a successful civil rights action that would necessarily imply the invalidity of a plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. Courts assess "whether a claim is temporally and conceptually distinct from the related conviction and sentence." *Smith v. Hood*, 900 F.3d 180, 185 (5th Cir. 2018) (internal quotation marks and quoted source omitted). Courts "ask whether the claims are necessarily inconsistent with the conviction, or whether they can coexist with the conviction or sentence without calling [it] into question." *Id.*

Here, Plaintiff claims that Deputy Clerk Sherry Barry "filed [the allegedly unlawful amended indictment] into public records at the Caddo Parish Courthouse on 9-22-2014 with the knowledge of its falsity." [doc. # 1, p. 3]. Barry allegedly "knew or should have known it was a counterfeit document." [doc. # 7, p. 3].

Prevailing on this claim—by proving that the indictment was false, unlawful, or counterfeit—would necessarily imply the invalidity of Plaintiff's convictions.[7] See, e.g., *Clark v. Williams*, 693 F.2d 381, 382 (5th Cir. 1982) (finding, where the plaintiff alleged that a clerk of court altered a trial transcript, that the claim "would factually undermine or conflict with the state court conviction which resulted in his present confinement.").

---

law enforcement authorities.").

[7] Plaintiff pled guilty to manslaughter and possession of a firearm by a convicted felon. [doc. #s 7, p. 4; 7-1, pp. 3, 12].

9

Next, Plaintiff appears to seek a declaration that defendants violated his constitutional rights. [doc. #s 1, p. 9; 7, p. 4]. While Plaintiff does not specify a particular unconstitutional action, it suffices that all of defendants' alleged actions would necessarily imply the invalidity of his convictions. For instance, he claims that his counsel was ineffective, that the assistant district attorney engaged in prosecutorial misconduct, that the district attorney failed to prevent prosecutorial misconduct, and that the trial judge should have recused. See *Mills v. Criminal Dist. Court No. 3*, 837 F.2d 677, 680 (5th Cir. 1988) (finding, where the plaintiff alleged that his attorney conspired with the prosecution and the judge, that the indictment was unlawfully amended, that his counsel was ineffective, and that the prosecutors engaged in misconduct, that "[a]ll of his allegations challenge the validity of his conviction . . . .").

Accordingly, Plaintiff may not seek relief for these claims and requests for relief until his convictions are reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus.

**6. Judicial Immunity**

Plaintiff claims that Judge Brady O'Callaghan "was the overseer of the proceedings." [doc. # 1, p. 5]. He also claims that O'Callaghan should have recused from the proceeding because he was a prosecutor when Plaintiff's "case came into the District Attorney's office[,]" and he therefore knew "the facts of [Plaintiff's] case in the mind of a prosecutor." [doc. # 7, p. 2]. Plaintiff claims further that O'Callaghan appointed Plaintiff an attorney who was related to the victim. *Id.* While O'Callaghan removed the attorney following Plaintiff's request, Plaintiff claims that O'Callaghan and the attorney "all work[ed] together and all had knowledge." *Id.*

"Judicial immunity is an immunity from suit and not just from the ultimate assessment of damages." *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005). It "applies even when the judge

10

is accused of acting maliciously and corruptly . . . ." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). It "extends to all judicial acts which are not performed in the clear absence of all jurisdiction." *Kemp ex rel. Kemp v. Perkins*, 324 Fed. App'x. 409, 411 (5th Cir. 2009) (citing *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985)).  There are only two exceptions: (1) non-judicial actions, i.e., actions not taken in the judge's judicial capacity; and (2) lawsuits challenging actions taken in the complete absence of all jurisdiction.  *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

"In determining whether an action is judicial, a court looks to the nature of the act itself; that is, whether the challenged act is a function normally performed by a judge."  *Id.*  Courts consider four factors: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.  *Ballard*, 413 F.3d at 515.  "These factors are broadly construed in favor of immunity."  *Id.*  "Immunity may be applied even if one or more of these factors is not met."  *Morrison v. Walker*, 704 F. App'x 369, 373 (5th Cir. 2017).

Here, managing or presiding over a court proceeding[8] and deciding whether to recuse are acts normally performed by a judge.[9]  Moreover, Plaintiff does not allege that Judge O'Callaghan acted outside of the courtroom or chambers.  Likewise, Plaintiff's claims clearly "center around" a proceeding before Judge O'Callaghan, and nothing indicates that the alleged

---

[8] See *Bradley v. Salvant*, 2020 WL 1896550, at *1 (5th Cir. Apr. 16, 2020); *Broadway v. Sinex*, 166 F.3d 339 (5th Cir. 1998).

[9] See *Price v. Porter*, 351 F. App'x 925, 926 (5th Cir. 2009) (finding a judge immune where the plaintiff alleged that the judge should have recused); *Lewis v. City of Waxahachie*, 465 F. App'x 383, 384 (5th Cir. 2012); *Amrhein v. United States*, 740 F. App'x 65, 67 (5th Cir. 2018).

11

acts arose outside of a visit to Judge O'Callaghan in his official capacity.[10] Plaintiff, further, does not allege that Judge O'Callaghan acted in the absence of all jurisdiction. See LA. CONST. art. V, § 16 ("[A] district court shall have original jurisdiction of all civil and criminal matters.").

"The fact that it is alleged that the judge acted pursuant to a conspiracy and committed grave procedural errors is not sufficient to avoid absolute judicial immunity." *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991). "It is a well established rule that where a judge's absolute immunity would protect him from liability for the performance of particular acts, mere allegations that he performed those acts pursuant to a bribe or conspiracy will not be sufficient to avoid the immunity." *Holloway v. Walker*, 765 F.2d 517, 522 (5th Cir. 1985).

Accordingly, Judge O'Callaghan is entitled to absolute judicial immunity. The Court should dismiss these claims.

**7. Judge O'Callaghan in His Official Capacity**

Plaintiff also seeks relief from Judge O'Callaghan in his official capacity. [doc. # 1, p. 3]. Liability under 42 U.S.C. § 1983 only applies to "person[s]" who deprive others of rights secured by the Constitution. In that respect, "State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21, 27 (1991). "[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official . . . ." *Id.*

Here, the State of Louisiana employs Judge O'Callaghan. See LA. REV. STAT. § 13:691.

---

[10] See *Morrison*, 704 F. App'x at 374 (finding judicial immunity even where the plaintiff failed to offer any allegations relating to three of the four *Ballard* factors); *Avdeef v. Royal Bank of Scotland, P.L.C.*, 616 F. App'x 665, 674 (5th Cir. 2015) ("Avdeef makes no effort to argue that Judge Chupp's actions were 'nonjudicial' in nature or were taken 'in the complete absence of all jurisdiction,' as required to overcome judicial immunity.").

"[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, the Court should dismiss Plaintiff's claims against Judge O'Callaghan in his official capacity.[11]

### 8. Attorney Kevin Berg

Plaintiff names Attorney Kevin K. Berg as a defendant because he "was the defense attorney." [doc. # 1]. He alleges: "Berg fail[ed] to protect my rights and by his failure to act as well as his statements. [sic]." [doc. # 7, p. 2]. Berg allegedly "conspired against" Plaintiff. *Id.*

To state a claim under Section 1983, a plaintiff must allege that a defendant acted "under color" of state law. 42 U.S.C. § 1983. "Anyone whose conduct is 'fairly attributable to the state' can be sued as a state actor under § 1983." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). "Fair attribution" means: (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible"; and (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar*, 457 U.S. at 937. Of import, "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981).

Here, Defendant Berg did not act under color of state law. See *Ellison v. De La Rosa*, 685 F.2d 959, 960 (5th Cir. 1982) (finding, where the plaintiff alleged that his counsel was ineffective "for allowing two fundamentally defective indictments to be prosecuted against him," that counsel was performing a lawyer's traditional function); *Amir-Sharif v. Dallas Cty. Pub.*

---

[11] "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." *Id.* (internal quotation marks and quoted sources omitted).

13

*Defs. Office*, 233 F. App'x 364, 365 (5th Cir. 2007) (finding, where a plaintiff was concerned with the "quality of legal assistance being provided to him by appointed counsel and the public defender[,]" that "the attorney defendants . . . are not state actors for § 1983 purposes."); *Linn v. Saitin*, 575 F. App'x 531, 532 (5th Cir. 2014) (affirming, where the plaintiff alleged that a public defender and her supervisor rendered ineffective assistance, that the defendants were not state actors).[12]

Plaintiff does allege that Berg "conspired against" him,[13] but this conclusory allegation is insufficient to classify Berg as a state actor. Plaintiff neither identifies with whom Berg conspired nor describes an agreement or concerted action to commit an illegal act. See *Mills*, 837 F.2d at 677 (finding, where the plaintiff conclusorily alleged that his "court-appointed attorney conspired with the judge and prosecutor when the attorney agreed to proceed upon an altered indictment, when he gave Mills erroneous legal advice and when he refused to provide Mills with an opportunity to examine personally certain exculpatory evidence[,]" that the allegations reflected "independent judgments and actions of the private attorney in the course of representing the defendant during trial.").[14]

---

[12] See also *O'Brien v. Colbath*, 465 F.2d 358 (5th Cir. 1972) (holding that the ineffective assistance of a public defender in a criminal case does not raise a claim cognizable under Section 1983 because no "state action" is involved and because Section 1983 was not intended as a "vehicle for prosecuting malpractice suits against court-appointed attorneys."); *U.S. ex rel. Simmons v. Zibilich*, 542 F.2d 259, 261 (5th Cir. 1976) ("The court-appointed attorney, like any retained counsel, serves his client. He represents the client, not the state. The ancillary facts that the court has a hand in providing counsel, and that the attorney selection board in Orleans Parish obtains its authority from statute, do not alter the attorney-client relationship. That relationship is our concern here. Accordingly, the district court correctly disallowed any [Section] 1983 claim raised by Plaintiff-Appellant, since the situation presents no state action.").

[13] [doc. # 7, p. 2].

[14] See also *Linn*, 575 F. App'x at 532 (rejecting the plaintiff's argument that his counsel acted in concert with the prosecution because the plaintiff "made only generalized allegations of

14

The Court should dismiss these claims.[15]

**9. District Attorney Charles Rex Scott**

Plaintiff claims that District Attorney Charles Rex Scott knew that Assistant District Attorney Hood "was acting against the law," yet allowed her to continue. [doc. # 7, p. 3]. He alleges that Scott "has entire control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute." *Id.*

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex*., 977 F.2d 924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div*., 37 F.3d 1146, 1150 (5th Cir. 1994). "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'" *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Here, District Attorney Scott cannot be vicariously liable for the actions of his subordinates. To the extent Plaintiff claims that Scott affirmatively participated in acts that

---

concerted action, which [were] insufficient to establish the existence of a conspiracy."); *Russell v. Millsap*, 781 F.2d 381, 383 (5th Cir. 1985) (a plaintiff's "mere characterization" of a defendant's conduct "as conspiratorial or unlawful [does] not set out allegations upon which relief can be granted."); *Miller v. Graham*, 447 F. App'x 549, 551 (5th Cir. 2011) ("Miller has presented no specific facts showing an agreement between the private defendants and any state actor in this case.").

[15] Plaintiff seeks relief from Berg in his individual and official capacities. Berg, however, has no official capacity because he is not a state actor. See *Jones v. Barry*, 33 F. App'x 967, n.5 (10th Cir. 2002).

15

deprived Plaintiff of a constitutional right because he was aware of Hood's actions and failed to prevent them, Scott is immune for the same reasons (discussed above) that Hood is immune.

Plaintiff also seeks relief from Scott in his official capacity. First, however, Scott is no longer the District Attorney in Caddo Parish[16] and thus has no official capacity. *Thompson v. Connick*, 553 F.3d 836, n. 27 (5th Cir. 2008), *on reh'g en banc,* 578 F.3d 293 (5th Cir. 2009), *rev'd,* 563 U.S. 51 (2011) ("Because it is undisputed that Connick, Dubelier, and Williams are no longer employed at the DA's Office, their official capacities are non-existent . . . .").

Even assuming Plaintiff named the current District Attorney as a defendant, Plaintiff does not allege that the current District Attorney—or his predecessor in office—implemented a policy so deficient that it deprived Plaintiff of his constitutional rights.

"For purposes of 'official capacity' suits under § 1983, the district attorney's office resembles other local government entities." *Burge*, 187 F.3d at 470. In that respect, "municipalities cannot be held liable for constitutional torts under § 1983 'on a *respondeat superior* theory,' but they can be held liable 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Id.* (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) (internal citation omitted)).

Here, Plaintiff's claim against the District Attorney's Office appears entirely premised on vicarious liability. Plaintiff does not allege that this is the rare circumstance in which a final policymaker performed the specific act that violated his constitutional rights; that the presence (or absence) of a policy, pattern, practice, custom, or procedure violated, or caused a violation of,

---

[16] CADDO PARISH DISTRICT ATTORNEY WEBSITE, https://www.caddoda.com/da-stewart/ (last visited April 24, 2020).

his constitutional rights; or that the need to take action to control the agents of the local governmental entity is so obvious that the final policymaker can reasonably be said to have been deliberately indifferent. See *Burge*, 187 F.3d at 471; see also *Howell v. Town of Ball*, 827 F.3d 515, 527 (5th Cir. 2016).

The Court should dismiss these claims.

### 10. Habeas Corpus Relief

Plaintiff seeks release from custody. This relief is unavailable through a civil rights action. See *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998) (any claim attacking the validity or duration of confinement must be raised in a habeas corpus petition); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). "A habeas petition . . . is the proper vehicle to seek release from custody." *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997). The Court should dismiss this request for relief.

### Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Danny Battle's claims against District Attorney Charles Scott, Judge Brady O'Callaghan, and Assistant District Attorney Sarah Hood be **DISMISSED** as frivolous, for failing to state claims on which relief may be granted, and for seeking monetary relief from defendants immune from such relief.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims against Deputy Clerk Sherry Barry, as well as Plaintiff's claims premised on his requests for declaratory relief, be **DISMISSED WITH PREJUDICE** as frivolous until the *Heck* conditions are met.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims against Attorney Kevin Berg be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's request for release from custody

be **DISMISSED WITHOUT PREJUDICE** to Plaintiff's right to pursue habeas corpus relief after he exhausts all available state court remedies.

**IT IS FURTHER RECOMMENDED** that Plaintiff's motion for appointed counsel, [doc. # 3], be **DENIED AS MOOT**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 24th day of April, 2020.

Karen L. Hayes
United States Magistrate Judge